**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 10-CV-24229-Ungaro

_____

CAMILO COSTA, et al.,

       Plaintiffs,

v.

CELEBRITY CRUISES, Inc.,

       Defendant.

_____

## <u>ORDER ON MOTION TO DISMISS</u>

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Amended

Complaint. (D.E. 17.)

THE COURT has reviewed the Motion and the pertinent portions of the record and

is otherwise fully advised in the premises.

**I**

Except for where the citations indicate otherwise, the following facts are taken

from the First Amended Complaint. (D.E. 14-1.)

Plaintiffs are citizens of India who worked as stateroom attendants for Defendant

Celebrity Cruise's Inc.'s (Celebrity). The terms of Plaintiffs' employment are governed

by a Collective Bargaining Agreement (the CBA) entered between Celebrity and

Plaintiffs' labor union (the Union).[1]

_____

[1] Plaintiffs individual employment contracts incorporated the terms of the CBA.

According to Plaintiffs, Celebrity breached the terms of their employment and the CBA by requiring Plaintiffs to share their earned gratuities with assistant cabin stewards and the chief housekeeper at the rates of $1.20 and $0.50 per day, respectively. This allegedly wrongful conduct continued from August 31, 2001 through January 1, 2005.

Accordingly, on October 21, 2009, Plaintiffs Camilo Costa and Bernard Fernandes submitted a demand for arbitration under the terms of the CBA to Celebrity and the Union, and, on December 9, 2009, Plaintiff Menino D'Acosta did the same. On December 29, 2009, the Union formally demanded arbitration on behalf of all three Plaintiffs.

Celebrity and the Union appointed Stanley H. Sergent as arbitrator (the Arbitrator). On May 28, 2010, Celebrity moved to dismiss the demand for arbitration on the grounds that Plaintiffs' claims were non-arbitral due to Plaintiffs' failure to submit grievances under the CBA. On July 27, 2010, a one-day arbitration hearing was held in Miami, Florida. And on August 28, 2010, the Arbitrator granted Celebrity's motion, holding that Plaintiffs' claims were non-arbitral for failure to exhaust the grievance procedure under the CBA.

On November 28, 2010, Plaintiffs filed the instant lawsuit seeking to vacate the arbitration award and a declaration that the Plaintiffs are not obligated to arbitrate their dispute. In the Amended Complaint, Plaintiffs seek to vacate the award under Chapter 1 of the Federal Arbitration Act (the FAA), 9 U.S.C. §§ 1–16; the Convention on the

2

Recognition and Enforcement of Foreign Arbitral Awards (the Convention) and its implementing legislation, Chapter 2 of the FAA, 9 U.S.C §§ 201– 08; and, the Florida International Arbitration Act (the FIAA), Fla. Stat. § 628.0027. The crux of Plaintiffs' claimed defenses are as follows: (1) vacatur is appropriate under Chapter 1 of the FAA §10(a)(3) and (4) because the Arbitrator failed to consider evidence that Plaintiffs' were "seafarers" and, therefore, exempt from the grievance process under Supreme Court precedent; (2) vacatur is appropriate under Chapter 1 of the FAA §10(a)(3) and (4) because the Arbitrator failed to consider evidence of Plaintiffs' lack of knowledge as to the CBA's "hyper-technical" grievance procedure and of Celebrity's practice of concealing such information; (3) vacatur is appropriate under the Convention and the FIAA because Celebrity's motion to dismiss the arbitration was contrary to its position in previous litigation; and (4) vacatur is appropriate under the Convention because seafarer's have a right not to be subject to grievance requirements.

In response, Celebrity filed the instant Motion to Dismiss arguing the Plaintiffs' impermissibly seek to appeal the Arbitrator's decision. Specifically, Celebrity argues that Plaintiffs' claims under Chapter 1 the FAA and FIAA must be dismissed because neither statute applies and that Plaintiffs' remaining arguments under the Convention do not implicate the public policy of the United States. Finally, Celebrity argues that Plaintiffs' claims for declaratory relief are duplicative and should be dismissed for the same reasons.

II

3

In order to state a claim, Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citation omitted). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* (citation omitted). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* (internal quotations and citation omitted). Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* (citation

omitted).

## III

The Court discusses Celebrity's Motion beginning with the arguments against the applicability of the FAA and the Florida Act.

The Convention and Chapter 2 of the FAA exclusively governs arbitration between a citizen of the United States and citizens of a foreign country. *See* 9 U.S.C. § 207; *Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1439–41 (11th Cir. 1998). Here, Plaintiffs are citizens of India and, thus, the Convention and Chapter 2 of the FAA apply.[2] Accordingly, Celebrity is correct that the only potential grounds for vacating the arbitration award in this case are the seven defenses to enforcement enumerated in the Convention. *Indus. Risk Ins.*, 141 F.3d at 1445–46. And any additional grounds for vacating an arbitration award as may be contained in Chapter 1 of the FAA or the FIAA are strictly inapplicable.[3] *See, e.g., id.* ("In short, the Convention's enumerations of defenses is exclusive."). For this reason, the Court will dismiss with prejudice Plaintiffs' claimed defenses under Chapter 1 of the FAA or the FIAA.

Thus all that remains are Plaintiffs' claimed defenses under Article V.2(b)[4] of the

---

[2] Chapter 2 of the FAA, therefore, also provides for subject matter jurisdiction in this case. 9 U.S.C. § 203.

[3] Although this may not be the rule in other circuits, it is the rule in the Eleventh Circuit.

[4] Article V of the Convention enumerates the following seven defenses to the enforcement of an award:

5

Convention, which provides a defense to enforcement where enforcement would be

contrary to the public policy of the United States.  Plaintiffs put forth two reasons why

enforcement of the Arbitrator's decision in this case is contrary to public policy.  Neither

---

1.      Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a)      The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b)      The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c)      The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submissions to arbitration, provided that, if the decisions on matter submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d)      The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e)      The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2.      Recognition and enforcement of a arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a)      The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b)      The recognition or enforcement of the award would be contrary to the public policy of that country.

6

is convincing.

"[T]he Conventions's public policy defense should be construed narrowly" and

applies where enforcement the award "would violate the forum state's most basic notions

of morality and justice." *See, e.g.*, *Parsons & Whittemore Overseas Co., Inc. v. Societe*

*Generale de L'Industrie du Papier*, 508 F2d 969, 974 (2d Cir. 1974). "Erroneous legal

reasoning or misapplication of the law is generally not a violation of public policy within

the meaning of the ... Convention." *Karaha Bodas Co., L.L.C. v. Perusahaan*

*Pertembangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004).

Plaintiffs' first reason why enforcement would violate public policy is that

Celebrity did not previously seek to compel the grievance in a similar litigation.

According to the Amended Complaint, seafarer Ignacio Lobo previously brought a

lawsuit against Celebrity involving the same policy from which Plaintiffs  sought redress

in this arbitration,[5] and Celebrity moved to compel arbitration without raising the

grievance issue. *See Lobo v. Celebrity Cruises, Inc.*, 488 F.3d 891, 894–95 (11th Cir.

2007). As Plaintiffs' argument goes, Celebrity cannot now attempt to enforce the

grievance procedure because it did not previously attempt to do so, or—in other

words—Celebrity secured one precedent in the Lobo litigation and to go against that

precedent now "constitutes a misuse of the judicial process, gamesmanship with out [*sic*]

---

[5] Plaintiffs were not parties to the litigation involving Lobo, and although Plaintiffs make oblique references to Rule 23, the record is void of any indication (or assertion) that Lobo litigation was certified as a class action.

7

court system—and a manifest injustice prejudicing the Plaintiffs [*sic*] due process rights."
(D.E. 14-1.) The Court disagrees.

Whether Celebrity was estopped from or had waived its right to demand
exhaustion of the grievance procedure in this dispute is not an issue of United States
public policy. *See id.* It is simply an issue of the application of the law or estoppel or
waiver, and therefore does not support the claimed public policy defense under the
Convention. And that is to say nothing of the myriad of reasons put forth by Celebrity in
its briefings as to why such an estoppel or waiver argument would fail on the merits in
any event.

Plaintiffs' second reason why enforcement would violate public policy is that
seafarers have an unqualified right not to be subject to grievance exhaustion under federal
maritime law.[6] In their Amended Complaint, Plaintiffs cite to *U.S. Bulk Carriers, Inc. v.
Aguelles*, 400 U.S. 351 (1971). The holding in *Aguelles*, however, speaks nothing of a
seafarer's unqualified right not be subject to grievance exhaustion. *See id.* Instead, the
holding is only that the Labor Management Relations Act's remedy for the enforcement
of arbitration and grievance provisions of certain collective bargaining agreements did not
supercede a seafarer's statutory right to access federal courts for wage disputes under the
Seaman's Wage Act. *See id. Aguelles* did not involve pre-arbitration grievance
exhaustion or the Convention, much less any public policy regarding a seafarer's rights

---

[6] Importantly, Plaintiffs do not oppose, in their Response to the Motion, Celebrity's
Motion to dismiss this second claimed public policy defense to enforcement.

not to be subject to grievance proceedings prior to arbitration.

This point of distinction can be of no surprise to Plaintiffs. It is the *exact* holding

of the United States Court of Appeals for the Eleventh Circuit in *Lobo*, 488 F.3d 891, to

which Plaintiffs cite numerous time throughout their brief.[7]

> [T]he underlying basis of the Supreme Court's decision in *Arguelles* was the fact that there was nothing in ... the LMRA to indicate an intent to abrogate the statutory right to sue in federal court afforded by the Seaman's Wage Act. ...
>
> In contrast, ... the Convention *compels* federal courts to direct qualifying disputes to arbitration, while the Supreme Court found the LMRA to be silent on the matter.

*Id.* at 895 (further noting that the Supreme Court had no occasion to consider the

Convention in *Arguelles* because oral argument occurred prior to its ratification). Clearly,

Plaintiffs' public policy pronouncement is unfounded.

Plaintiffs also invoke the public policy, outlined in *Thomas v. Carnival Corp.*, 573

F.3d 1113 (11th Cir. 2009), which prohibits the enforcement of arbitration agreements

which, through foreign choice-of-law provisions, operate to deprive seafarers of United

States statutory remedies. However, there is no indication in the Amended Complaint

that any law other than United States law was applied by the Arbitrator. Thus, this public

policy is simply not implicated.

Although the Court might normally dismiss the claimed defenses under the

Convention without prejudice and allow Plaintiffs leave to amend their pleading, the

---

[7] Moreover, it was Plaintiffs' counsel who represented Lobo before the District Court.

Court sees no reason to do so here.  Plaintiffs have already had opportunity to amend their similar initial Complaint in the face of Celebrity's then-pending and also similar Motion to Dismiss (D.E. 9.)  Plaintiffs  were unable to allege an adequate claim for vacatur their second time around, and the Court has no reason to believe the third time will be a charm.  Accordingly, the Court will dismiss Plaintiffs' claimed defenses to enforcement under the Convention with prejudice.

Finally, Plaintiffs do not contest Celebrity's argument that their claim for declaratory relief is completely duplicative of their claimed defenses under the FAA, the FIAA, and the Convention, and do not otherwise oppose its dismissal.  Accordingly, the Court will also dismiss the claim for declaratory relief with prejudice.

Therefore, it is

ORDERED AND ADJUDGED that the Motion (D.E. 17) is GRANTED.  Plaintiffs' First Amended Complaint is DISMISSED WITH PREJUDICE.  It is further

ORDERED AND ADJUDGED that the Clerk of Court SHALL administratively close this case.  It is further

ORDERED AND ADJUDGED that all pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida this 25th   day of February, 2011.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record